Greenspan v Stand-Up MRI of Manhattan, P.C. (2022 NY Slip Op 04220)

Greenspan v Stand-Up MRI of Manhattan, P.C.

2022 NY Slip Op 04220

Decided on June 30, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 30, 2022

Before: Friedman, J.P., Gesmer, Shulman, Pitt, JJ. 

Index No. 805369/16 Appeal No. 16235 Case No. 2021-04537 

[*1]Lloyd Greenspan, Plaintiff-Respondent,
v
Stand-Up MRI of Manhattan, P.C., et al., Defendants-Appellants, NYU Hospitals Center, Defendant-Appellant-Respondent, RYC Orthpaedics, P.C., et al., Defendants.

Bartlett LLP, Central Islip (William Robert Devine of counsel), for Stand-Up MRI of Manhattan, P.C., appellant.
Furey, Furey, Leverage, Manzione, Williams & Darlington, P.C., Hempstead (Heidelind M. Semming of counsel), for Ron Mark, M.D., appellant.
Aaronson Rappaport Feinstein & Deutsch, LLP, New York (Deirdre E. Tracey of counsel), for Alan Pinyavat, M.D., appellant/respondent.
Dwyer & Taglia, Valhalla (Gary J. Dwyer of counsel), for Dr. Alec S. Goldenberg, M.D., appellant.
Pollack, Pollack, Isaac & DeCicco LLP, New York (Brian J. Isaac of counsel), for respondent.

Order, Supreme Court, New York County (Eileen A. Rakower, J.), entered on or about November 3, 2021, which, to the extent appealed from, denied defendants Stand-Up MRI of Manhattan, P.C.'s, Alec S. Goldenberg, M.D.'s, Ron Mark, M.D.'s, and Alan Pinyavat M.D. and NYU Hospitals Center's motions for summary judgment dismissing the complaint as against them and granted plaintiff's motion to amend the pleadings to add an allegation against NYU Hospital Center (NYU), unanimously modified, on the law, to grant Dr. Pinyavat's motion, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint as against Dr. Pinyavat.
Dr. Pinyavat established prima facie that he did not deviate from good and accepted practice by submitting an expert affidavit opining that he complied with the applicable standard of care in focusing his examination on plaintiff's specific complaints about his arm and shoulder; plaintiff had made no complaints about his prostate or urinary tract. The expert also opined that Dr. Pinyavat, upon finding lung abnormalities on the CT-Scan of plaintiff's upper right extremity, properly ordered a CT-Scan of the chest and immediately referred plaintiff to an appropriate specialist after the scan indicated possible metastatic cancer (see Foster v Kassab, 201 AD3d 405, 406 [1st Dept 2022]).
In opposition, plaintiff failed to raise an issue of fact; his expert oncologist did not provide any experiential or foundational basis for opining on the standards of care for a general practitioner (see Nguyen v Dorce, 125 AD3d 571, 572 [1st Dept 2015]; Mustello v Berg, 44 AD3d 1018, 1018-1019 [2d Dept 2007], lv denied 10 NY3d 711 [2008]) and did not adequately address defendant's expert opinions. As to causation, he opined that Dr. Pinyavat's failure to perform PSA bloodwork led to a delayed diagnosis of prostate cancer. However, plaintiff's paraplegia was caused by spinal tumors, and, while the site of the prostate cancer was the origin of the metastatic cells that developed into the tumors, the origin of the cancer had no direct connection to plaintiff's paralysis. Moreover, even if Dr. Pinyavat should have performed PSA bloodwork, his failure to do so is irrelevant, given that the tests he performed revealed possible metastatic cancer and he proceeded accordingly.
Dr. Mark, Dr. Goldenberg and Stand-Up MRI argue that the NYU anesthesiologist's maintenance of a low mean arterial pressure during plaintiff's February 2015 MRI was an intervening and superseding cause of plaintiff's paraplegia that severed any causal connection between the injury and Dr. Mark's and Dr. Goldenberg's failures to timely discover and treat plaintiff's metastatic conditions and any departures from good and accepted practice on Stand-Up MRI's part (see Hain v Jamison, 28 NY3d 524, 528-529 [2016]; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]). However, malpractice resulting in aggravation of an injury is a foreseeable consequence [*2]of the acts of an initial tortfeasor (Glaser v Fortunoff of Westbury Corp., 71 NY2d 643, 647 [1988]). It was foreseeable that Dr. Mark's admitted failure to timely discover and report the spinal tumors would lead to the need for additional testing, and there is expert evidence that this failure resulted in the weakening of plaintiff's spine, which may have led to the spinal infarct during the MRI at NYU that possibly caused plaintiff's paraplegia. For the same reasons, any perceived error of the NYU anesthesiologist did not relieve Dr. Goldenberg from liability for any failure on his part to timely diagnose and treat plaintiff's cancer.
The court providently exercised its discretion in permitting plaintiff to amend his bill of particulars to add an allegation that the NYU anesthesiologist negligently administered anesthesia during the MRI (see CPLR 3025 [b]). Plaintiff's explanation that he did not realize that his copy of the NYU medical records was incomplete is a reasonable excuse for the delay (see Cameron v 1199 Hous. Corp., 208 AD2d 454 [1st Dept 1994]). NYU failed to show prejudice, and the merits of the claim were established by Dr. Mark's, Dr. Goldenberg's, and Stand-Up MRI's experts (see Davis v South Nassau Communities Hosp., 26 NY3d 563, 580 [2015]; Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959 [1983]). 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 30, 2022